Minute Order Form (06/97)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 5540 | DATE | 7/27/2004 |
| CASE TITLE | BERRY vs. LINDEMANN | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Motion (50-1) to strike is denied. Motion (42-1) for summary judgment is granted. Motion (43-1) for summary judgment is granted in part and denied in part. Summary judgment is entered in favor of defendants Lindenman, Negro, Fuentes, Stanley, and Simental.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| ✓ | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | AUG 1 8 2004 | |
| | Notified counsel by telephone. | | date docketed | 54 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| DW | courtroom deputy's initials | 2004 AUG 17 PM 4:15 U.S. DISTRICT COURT CLERK Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DENISE BERRY, et al.,

    Plaintiffs,

v.

MASTER SERGEANT LAWRENCE
LINDENMAN, et al.,

    Defendants.

No. 00 C 5540
Judge James B. Zagel



## MEMORANDUM OPINION AND ORDER

### Factual Background

Plaintiffs Denise Berry, Catherine Gill, Derrick Hopson, Hellen Kelly, Pawneaul Maddox, Lillian Morgan, Alfred Noble, and Wanda Poe are current and former employees of the Illinois Department of Human Services ("DHS"), employed as Mental Health Technicians ("MHTs") at the Howe Development Center ("Howe Center"). Plaintiffs bring this case under 42 U.S.C. § 1981, claiming that Defendants Master Sergeant Lawrence Lindenman, Lieutenant Peter Negro, Master Sergeant William Fuentes, Sergeant Todd Stanley, Master Sergeant Deborah Simental ("Defendant Officers"), and Defendant Keni Kahoun violated their Fourth and Fourteenth Amendment rights. Specifically, Plaintiffs claim they were wrongfully arrested, wrongfully charged, and maliciously prosecuted by the Defendant Officers and that they were wrongfully accused of patient abuse by Defendant Kahoun. Plaintiffs also bring a claim pursuant to 42 U.S.C. § 1981, alleging that the Defendant Officers discriminated against them because of their race.

54

On October 27, 1999, Defendant Kahoun, a Howe MHT supervisor, witnessed what she believed were two instances of patient abuse. Kahoun claims to have observed Plaintiff Berry hit long-term Howe Resident T.J. three times on the back of the head and to have observed the other Plaintiffs hitting and kicking or observing the abuse of long-term Howe Resident N.J. while he lay curled into the fetal position on the floor of classroom 33. Kahoun immediately reported the incident to the Living Unit Administrator Misha Stewart and to Howe Center investigators. Investigator Jeanne Matson called the Illinois State Police Office of Investigations in Tinley Park, Illinois. Defendant Lindenman received the call in which Matson described allegation of abuse against several Howe MHTs.

Based on this call, the Defendant Officers went to the Howe Center to investigate. Upon arrival, Matson and Defendant Kahoun[1] further described the alleged patient abuse to Defendant Lindenman. The Defendant Officers then went on to interview the Plaintiffs, except for Plaintiffs Noble and Hopson, as well as their alleged victims, T.J. and N.J. Plaintiff Berry was arrested that evening by Defendant Lindenman and charged with misdemeanor battery. At a later date, Plaintiffs Noble and Kelly were interviewed by Assistant State's Attorney, Mary Jo Murtaugh, who thereafter approved felony charges of abuse against Plaintiffs Gill, Hopson, Noble, and Poe. Plaintiffs Gill, Hopson, Noble, and Poe were arrested on January 6, 2000 by Officers Lindenman, Negro, and Simental.

---

[1] Defendant Kahoun spoke with Officer Lindenman via telephone.

## Analysis

The Defendant Officers and Defendant Kahoun now move for summary judgment.[2]

Summary judgment is proper when there is no genuine issue of material fact and the moving

party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323

(1986). In determining whether any genuine issue of material fact exists, I must construe all facts

in the light most favorable to the non-moving party and draw all reasonable and justifiable

inferences in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A genuine

---

[2] Defendants have also moved to strike certain portions of Plaintiffs' Response, arguing that much of Plaintiffs' Rule 56.1 Statement of Additional Facts and Response to Defendants' Statement of Facts should be disregarded as improper. To support their Statement of Additional Facts and to deny certain facts in Defendants' Statement of Uncontested Facts, Plaintiffs rely on newly submitted Affidavits of each Plaintiff, which are attached to their Response as Exhibits. As Defendants have pointed out, many statements made in those affidavits are inconsistent with the individual Plaintiffs' prior deposition testimony. It is well accepted that "a party may not attempt to survive a motion for summary judgment by manufacturing a factual dispute through the submission of an affidavit that contradicts prior deposition testimony." *Amadio v. Ford Motor Co.*, 238 F.3d 919, 926 (7th Cir. 2001). Likewise, a Plaintiff may not set forth facts in an affidavit in much greater detail than the Plaintiff was able to provide at a prior deposition. *See Jurlean Market v. Ill. Bell Tel. Co.*, 01 C 3841, 2003 U.S. Dist. LEXIS 20397 at *10 (N.D. Ill. Nov. 12, 2003).

To the extent that Plaintiffs' affidavits are inconsistent with their prior deposition testimony, they are stricken. Any of Plaintiffs' Additional Facts based on the improperly contradictory sections of Plaintiffs' Affidavits are stricken. Plaintiffs' denials of Defendants' Statement of Uncontested Facts that are based on the inconsistent sections of their Affidavits are also stricken and those Uncontested Facts are deemed admitted. These admissions include paragraphs 17, 18, 19, 20, 21 (the portions stating that N.J. was on the floor), 22, 23, 24, 25, 29, 30 (the portions regarding Kahoun's statement not to hit), 31 (the portions regarding Kahoun's statement not to hit), 43, 44, 47, 48, and 49.

Additionally, any statements made by Plaintiffs alleging that Kahoun discriminated against them or had any kind of discriminatory motive are immaterial to this case and are, therefore, stricken. On February 11, 2002, I dismissed Plaintiffs' Section 1981 claims against Kahoun making any such allegation irrelevant. Those Additional Facts include paragraphs 151-163.

3

issue of fact exists only when, based on the record as a whole, a reasonable jury could find for the non-movant. *Pipitone v. United States*, 180 F.3d 859, 861 (7th Cir. 1999).

**I. The Defendant Officers' Motion for Summary Judgment**

Plaintiffs claim that the Defendant Officers violated their Fourth and Fourteenth Amendment rights by depriving them of their liberty, falsely arresting and charging them, and maliciously prosecuting them, in violation of 42 U.S.C. § 1983. Plaintiffs also claim that the Defendant Officers discriminated against them on the basis of their race, in violation of 42 U.S.C. §1981.

**A. Plaintiffs Berry, Gill, Hopson, Noble, and Poe's Claims of False Arrest**

The Defendant Officers argue that Plaintiffs Berry, Gill, Hopson, Noble, and Poe cannot succeed on their claims of false arrest because probable cause existed at the time of the arrest. "It is well settled that the actual existence of probable cause to arrest precludes a § 1983 suit for false arrest." *Juriss v. McGowan*, 957 F.2d 345, 349 (7th Cir. 1992). A police officer has probable cause to arrest when "the facts and circumstances within [his] knowledge and of which [he has] reasonably trustworthy information sufficient to warrant a prudent [person] in believing that the [suspect] had committed or was committing an offense." *Booker v. Ward*, 94 F.3d 1052, 1057 (7th Cir. 1996). In fact, "when an officer has 'received his information from some person–normally the putative victim or an eyewitness–who it seems reasonable to believe is telling the truth,' he has probable cause to arrest the accused perpetrator." *Jenkins v. Keating*, 147 F.3d 577, 585 (7th Cir. 1998) (quoting *Gramenos v. Jewel Cos. Inc.*, 797 F.2d 432, 439 (7th Cir. 1986).

4

Plaintiff Berry was arrested on October 27, 1999 for the misdemeanor battery of long-term Howe resident T.J. In making this arrest, Officer Lindenman[3] relied on statements made by Defendant Kahoun[4] and by T.J.[5] Specifically, Defendant Kahoun told Officers Lindenman, Fuentes, and Simental that she saw Berry strike T.J. on the back of the head with an open hand three times. During his interview, T.J. stated that Berry hit him on the back of the head and was observed holding and rubbing the back of his head. Except for their own denials of guilt,[6] Plaintiffs have not presented any evidence indicating that Officer Lindenman had reason to doubt the veracity of Kahoun's and T.J.'s statements. Therefore, I find that Kahoun's and T.J.'s statements were sufficient to create probable cause for Berry's arrest.[7]

Plaintiffs Gill, Hopson, Noble, and Poe were arrested on January 6, 2000 for felony abuse of long-term Howe resident N.J. In making these arrests Officers Lindenman, Negro, and

---

[3] Officer Stanley played a minor role in Berry's arrest.

[4] Plaintiffs argue that Officer Lindenman should not have relied on Kahoun's statement because Kahoun was, in their opinion, lying. However, for this inquiry, it does not matter if Kahoun was lying or not. What matters is whether Lindenman doubted Kahoun's statements.

[5] Plaintiffs also argue that Officer Lindenman should not have relied on T.J.'s statements because they were somewhat jumbled. Officer Lindenman, however, relied on them only to the extent that they supported statements made by another, more coherent witness, Defendant Kahoun. This, I think, was appropriate given the circumstances here.

[6] Plaintiffs attempt to argue that Officer Lindenman should have disregarded the statements of Kahoun and T.J. because the Plaintiffs themselves denied wrongdoing. However, there is no requirement that an officer disregard the statement of a witness or victim just because the subject denies wrongdoing. If that were the case, it would create an undesirable situation where cause exists only in the rare instance where the suspect immediately confessed.

[7] Officers Negro, Fuentes, and Simental deny that they had any involvement with Berry's arrest and there is no evidence in the record to the contrary. Therefore, I find that with respect to Berry's arrest, these Officers do not have the personal involvement required for § 1983 liability. *Gentry v. Duckworth,* 65 F.3d 555, 561 (7th Cir. 1995).

Simental relied on the following: (1) Kahoun's October 27th statements that she saw N.J. laying on the floor of classroom 33 surrounded by Gill, Hopson, Noble, and Poe, who appeared to be hitting N.J. with a broom handle and kicking him, (2) statements made by N.J. on October 27th corroborating the abuse, and (3) Dr. Dayon's November 2, 1999 statements that she had examined N.J. and found his injuries consistent with being kicked and hit with a broom handle.[8] Again, except for their own denials of guilt, the Plaintiffs have not presented any evidence to show that the Officers should have doubted the veracity of these statements at the time of their arrests. Thus, I find that these statements were sufficient to create probable cause for the arrest of Gill, Hopson, Noble, and Poe. Since the existence of probable cause is preclusive of a § 1983 claim for false arrest, summary judgment on Plaintiffs' claims of false arrest is appropriate.

Even if probable cause for the arrests had not existed, summary judgment would still be appropriate. Government officials are shielded from liability for civil damages so long as their conduct does not violate clearly established constitutional rights of which a reasonable person would have been aware. *McDonnell v. Cournia*, 990 F.2d 963, 968 (7th Cir. 1993) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). With respect to claims against police officers involving unlawful arrests, qualified immunity protects police officers even if they make a reasonable mistake as to the existence of probable cause. *Be Vier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986). If a reasonable

---

[8] Officers Stanley and Fuentes deny any involvement in these arrests and there is no evidence in the record to the contrary. Therefore, I find that with respect to the arrest of Plaintiffs Gill, Hopson, Noble, and Poe, these Officers do not have the personal involvement required for § 1983 liability. *Gentry*, 65 F.3d at 561.

officer could have believed, in light of the circumstances, that probable cause existed for the arrest, qualified immunity applies. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

Given the circumstances of this case, it is quite clear that a reasonable officer could have believed probable cause for the arrests of Berry, Hopson, Noble, Gill, and Poe existed. The Defendant Officers considered not only the statements of the primary witness, Defendant Kahoun, but also the statements of the victims, N.J. and T.J and N.J.'s treating physician, Dr. Dayon. Additionally, in Hopson, Noble, Gill, and Poe's case, the Officers sought and received approval for the arrest from Assistant State's Attorney Mary Jo Murtaugh, who had herself conducted some of the interviews in the case. Therefore, I find that a reasonable officer could have believed probable cause existed for these arrests and that the Defendant Officers are entitled to qualified immunity.

### B. Plaintiffs Berry, Hopson, Noble, Gill, and Poe's Claims of Malicious Prosecution

The Defendant Officers argue that Plaintiffs Berry, Hopson, Noble, Gill, and Poe's claims of malicious prosecution must also fail because of the then existing probable cause. As with claims of false arrest, claims of malicious prosecution are precluded by probable cause. *Biddle v. Martin*, 992 F.2d 673, 673 (7th Cir. 1993). Since probable cause existed for the arrests of Berry, Hopson, Noble, Gill, and Poe, summary judgment on their claims of malicious prosecution is also appropriate.

### C. Plaintiffs' Claim for Deprivation of Liberty

The Defendant Officers argue that the interviews conducted at the Howe Center on October 27th did not rise to the level of an unlawful seizure within the meaning of the Fourth Amendment. "A person has been 'seized' within the meaning of the Fourth Amendment only if,

in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *U.S. v. Mendenhall,* 446 U.S. 544, 554 (19). In an employment setting, "no restriction on an employee's freedom of movement may be attributed to police agents, for purposes of evaluating whether the employee was seized, unless 'the agents' conduct' gave the employees 'reason to believe that they would be detained' even 'if they gave truthful answers to the questions put to them or if they refused to answer." *Driebel v. City of Milwaukee,* 298 F.3d 622, 641 (7th Cir. 2002) (citing *Florida v. Bostick,* 501 U.S. 429, 436 (1991).

In this case, all Plaintiffs were employees of DHS and were required to cooperate with investigations of patient abuse. In response to Kahoun's allegations of abuse, each Plaintiff was escorted to Howe's Administrative Building by a member of DHS staff for questioning. The Plaintiffs' interactions with the Defendant Officers were as follows:

- Plaintiff Morgan was interviewed by Officer Simental and Agent Saffold[9] and then told that she could go home.
- Plaintiff Kelly was interviewed by Officers Lindenman and Negro, who informed Kelly that she was not under arrest. Kelly asked for and was allowed to see her lawyer who advised Kelly to leave, which she did. At a later date, Kelly was told, by DHS staff, to go to the Tinley Park state police office. When she arrived, she was read her Miranda rights, which she exercised and left.
- Plaintiff Maddox was questioned by Officers Lindenman and Negro after which time she was told she could go home.
- Plaintiffs Noble and Hopson were not interviewed by the Defendant Officers on October 27th.
- Plaintiffs Gill and Poe were interviewed by the Defendant Officers and then were allowed to leave.
- Plaintiff Berry was interviewed and then placed under arrest for misdemeanor battery.

---

[9] Agent Saffold is not a party to this suit.

These facts show that the Plaintiffs were interviewed at their place of employment, pursuant to their employer's policy concerning allegation of abuse, after which time they were allowed to go home. Plaintiffs have not provided any evidence to indicate that the Defendant Officers prevented them from leaving the Administration building. In fact, with the exception of Berry, the five Plaintiffs who were interviewed were allowed to leave immediately after the interviews were completed, one of whom was allowed to leave even though she refused to answer the Officers' questions. The two remaining Plaintiffs were allowed to leave without being interviewed at all. Clearly, these Plaintiffs were not being unlawfully detained by the Defendant Officers.[10] Since these interviews did not rise to the level of a 'seizure' under the Fourth Amendment, I find that summary judgment on Plaintiffs' claims of unlawful detention is appropriate.

Even if the Plaintiffs' had been deprived of their liberty, I would still find that summary judgment on this claim was appropriate. As discussed above, "qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Anderson,* 483 U.S. at 638. DHS had a well established policy for investigating allegation of abuse. In fact, when the Defendant Officers arrived at Howe, the Plaintiffs already had been taken to the Administrative Building and were awaiting interviews. Given the serious nature of the abuse allegations in this

---

[10] In all likelihood, Plaintiffs did feel an obligation to submit to the Officers' questions. However, this obligation arose from their duties as Howe/DHS employees, not from the Defendant Officers' actions. It was DHS staff who accompanied the Plaintiffs to the Administration Building and told them to wait there, it was DHS staff who paid Plaintiffs overtime for participating in these interviews, and it was DHS staff who put Plaintiffs on paid leave pending the results of the investigation.

case, it simply cannot be argued that a reasonable officer would have believed that proceeding to interview Plaintiffs would amount to unlawful detention.

### D. Plaintiffs' Claims of Discrimination

The Defendant Officers argue that Plaintiffs' § 1981 claims cannot succeed because Plaintiffs have not established the requisite discriminatory intent. Since Plaintiffs have no direct evidence of discrimination, they must show intent through the indirect, burden shifting method established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). As part of the indirect method of proof, Plaintiffs must show that another, non-African American employee had been treated differently when faced with allegations of abuse. *Id.* Since Plaintiffs have presented no such evidence,[11] I find that summary judgment on this claim is appropriate.

## III. Defendant Kahoun's Motion for Summary Judgment

In their Third Amended Complaint, Plaintiffs allege that Defendant Kahoun violated their Fourth Amendment rights by falsely reporting that Plaintiffs Berry, Hopson, Gill, Noble, and Poe abused patients in her presence and that Plaintiffs Kelly and Maddox failed to report the abuse. Plaintiffs claim that Kahoun's report regarding their conduct resulted in either seizure for purpose of interrogation or seizure and subsequent arrest. First, it is important to make clear that only Plaintiffs Berry, Gill, Hopson, Noble, and Poe have a potentially valid claim against Kahoun. This stems from my earlier finding that the interviews conducted by the Defendant

---

[11] Plaintiffs did claim that Kahoun's (a white, Howe employee) allegations were believed over their denials because of race. This, however, is irrelevant because Kahoun was not similarly situated. Kahoun was a witness to abuse and not an abuser. To make a case under the indirect, burden shifting method, Plaintiffs would have to provide evidence of white employees accused of abuse, perhaps by an African-American employee, going unquestioned and unpunished.

10

Officers on October 27th did not amount to a seizure under the Fourth Amendment. Said another way, the Plaintiffs who were not arrested, Plaintiffs Morgan, Maddox, and Kelly, did not undergo any kind of 'seizure' and, therefore, have no claim against Kahoun.

Defendants argue that Plaintiff Berry's claim of a false report is barred by issue preclusion. On January 17, 2002, the Civil Service Commission of Illinois found that Defendant Kahoun's testimony regarding the T.J. incident on October 27th was credible. In this proceeding, the Civil Service Commission was acting in a judicial capacity and resolved disputed issues of fact at a hearing in which Plaintiff Berry participated with the representation of counsel. In its Findings and Decisions, the Commission noted that both the Administrative Law Judge and the Commission found that Kahoun was a credible witness, that her version of the events on that day presented no logical or factual inconsistencies, that she testified as to what she observed, and that she was in a position to see what she saw. Further, they found that there was no evidence that Kahoun held any animosity toward Plaintiff Berry or had any reason to testify falsely against her.

In *Univ. of Tenn. v. Elliott*, 478 U.S. 788 (1986), the Supreme Court held that, as a matter of federal common law, and to further interests of federalism in respecting the decision of state tribunals, "when a state agency acting in a judicial capacity...resolves disputed issues of fact properly before it, which the parties have had an adequate opportunity to litigate, federal courts must give the agency's fact-finding the same preclusive effect to which it would be entitled in the State's courts." *Id.* at 799 (citations omitted). *See also Klein v. Perry*, 216 F.3d 571, 572 (7th Cir. 2000); *Crot v. Byrne*, 957 F.2d 394 (7th Cir. 1992). Under Illinois law, preclusive effect is given to administrative adjudications. *Rekhi v. Wildwood Indus.*, 61 F.3d 1313, 1319 (7th Cir. 1995); *Bd. of Ed. v. Ill. Ed. Labor Relations Bd.*, 617 N.E.2d 269, 273 (Ill. App. Ct. 1993); *McCulla v. Indus. Comm'n*, 597 N.E.2d 875, 878 (Ill. App. Ct. 1992). Since the Civil Services

11

Commission found Defendant Kahoun's testimony about the reported incident to be credible and reliable, Berry's claim that Kahoun made a false report is barred by issue preclusion. Therefore, I find that summary judgment on Berry's claim against Kahoun is appropriate.

Next, Defendant Kahoun argues that Plaintiffs[12] cannot prevail on their Fourth Amendment claims concerning the N.J. incident because they have not shown Kahoun made an intentionally false report. As a general rule, an accident report may be actionable only if a plaintiff can show that the report contains fabricated information. *McCullah v. Gadert*, 344 F.3d 655 (7th Cir. 2003). To support their claim, Plaintiffs have attempted to deny that the events reported by Kahoun ever took place. However, many of the denials that appeared in their Response to Defendants' Motions for Summary Judgment have been stricken because they directly conflict with Plaintiffs' earlier given deposition testimony. Because of these inconsistencies, I have deemed admitted that some kind of altercation between Plaintiffs Gill, Hopson, Noble, Poe and N.J. took place on October 27th, that N.J. ended up on the floor of classroom 33 surrounded by Plaintiffs, and that Plaintiff Kelly was blocking the classroom's door. Thus, I am assuming that those parts of Kahoun's report are true. However, Kahoun's claims that Plaintiffs Gill, Hopson, Noble, and Poe were kicking N.J. and hitting him with the handle of a broom are still materially disputed facts. It is possible, when viewing the facts in the light most favorable to Plaintiffs' case, that Kahoun could have fabricated this part of her report, leaving open the possibility of a Fourth Amendment violation.

Finally, Defendant Kahoun argues that she is entitled to qualified immunity. As I stated earlier, "qualified immunity protects all but the plainly incompetent or those who knowingly

---

[12] Plaintiffs here means those Plaintiffs who have remaining claims against Kahoun–Plaintiffs Gill, Hopson, Noble and Poe.

12

violate the law." *Anderson,* 483 U.S. at 638. However, qualified immunity would not protect Kahoun if she knowingly lied in her report. Since there is still an issue of fact as to whether Kahoun's statements concerning the kicking and hitting of N.J. were true, Kahoun may not be protected by qualified immunity. Accordingly, I find that summary judgment as to Plaintiffs Gill, Hopson, Noble, and Poe's claims against Kahoun is inappropriate at this time.

## Conclusion

For the reasons stated herein, the Defendant Officers' Motion for Summary Judgment is GRANTED, and Defendant Kahoun's Motion for Summary Judgment is GRANTED in part and DENIED in part.

ENTER:

_____
James B. Zagel
United States District Judge

DATE: JUL 2 7 2004